UNITED STATES, Appellee

v.

RICHARD PLUMMER, Private First Class, U. S. Army, Appellant

1 USCMA 373, 3 CMR 107

No. 235

Decided May 7, 1952

LT. COL. George M. Thorpe, USA, for appellant.
MAJ. Augustus A. Marchetti, USA, and 1ST LT. Eugene L. Grimm, USA,
for Appellee.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

Petitioner was charged with the rape of a Korean woman and an assault with a dangerous weapon upon the same woman. Both offenses occurred in Korea on May 13, 1951. Petitioner was tried and convicted by general court-martial on both charges and was sentenced to a dishonorable discharge, total forfeitures, and life imprisonment. The convening authority approved, and the Army board of review affirmed but reduced the confinement to 25 years. We granted petition for review, directed to the following issues:

(1) Whether the law officer erred in excluding testimony of lack of complaint by the victim of the rape; and

(2) whether the refusal of a continuance by the law officer was prejudicial error.

The prosecution case consisted almost solely of the testimony of Mrs. Chai Chang Sook, the victim of the alleged rape. She testified that petitioner entered her house and offered to pay her for an act of prostitution. She refused, but petitioner threatened her with a knife, undressed her, and raped her. When she resisted, petitioner cut her on the thigh with a knife. The only corroboration of her story consisted of the testimony of a companion of petitioner and a Korean neighbor, both of whom saw petitioner enter the house and leave a short time later. No outcries were heard. After petitioner left

the house, Mrs. Chai went to a nearby American Aid Station where a Captain Cuprys questioned her through an interpreter (Korean). At this time, the woman's clothing was not disarranged. She showed no signs of a struggle, was not hysterical, and indicated no fear. She complained of the knife wound. An Army doctor subsequently examined the woman for signs of rape but found none.

While Captain Cuprys was testifying, defense asked on cross-examination whether the woman had made any complaint of rape. The law officer excluded the negative answer of the captain, after objection by the trial counsel, on the ground that the answer was hearsay. The question raised is whether a witness may testify to knowledge obtained by him from another through an interpreter.

It is the general rule that a statement made through an interpreter may be proved only by the testimony of the interpreter. Manual for Courts-Martial, 1951, paragraph 141; Wigmore, Evidence, § 668. There is, however, a well-recognized exception to the general rule. If the interpreter may be considered the agent of the person making the statement, the translation heard by the other party may be received in evidence. MCM 1951, paragraph 141. This exception has also been extended to the situation where the interpreter acts as the agent for both parties. Commonwealth v. Vose, 157 Mass 393, 32 NE 355; Wigmore, Evidence, Third Ed., § 1810. There are circumstances here which would indicate that the interpreter was acting as the agent for both parties, but we need not decide this issue. After the law officer ■ refused to allow the defense to prove lack of complaint through Captain Cuprys, defense requested an overnight continuance in order that the interpreter might be called as a witness, urging as grounds therefor that he was surprised by the ruling of the law officer. The continuance was denied. We think the law officer should have allowed the continuance to obtain the interpreter, after the defense was obviously surprised by the ruling on what is, even to us, a very close question of law.

The Manual for Courts-Martial, 1951, gives in detail the rule governing granting of continuances. Paragraph 58c states that the right to secure necessary witnesses is fundamental and must be extended to accused persons, and that the absence of a material witness is reasonable ground for granting a continuance. "Although the question of a continuance is one for the sound discretion of the court, whenever it appears that the court has abused its discretion and denied the accused a reasonable opportunity to prepare for trial or otherwise perfect his defense, the proceedings should be disapproved." MCM 1951, paragraph 58d. Appellate courts, both Federal and state, have repeatedly held that a refusal to grant a continuance under proper circumstances constitutes an abuse of discretion by the trial court. See Paoni v. United States, 281 Fed 801; Paschen v. United States, 70 F 2d 491; Lacks v. Commonwealth, 182 Va 318, 28 SE2d 713; McFarland v. State, 132 Tex Crim 309, 104 SW2d 879. In Blanton v. State, 135 Tex Crim 654, 122 SW2d 644, the court held that if the testimony of the absent witness was competent, material, credible, and would have supported the defendant's contentions, and if it is reasonably probable that a different result might be reached if the testimony sought by defense were before the court, the refusal to grant a continuance to obtain the witness is reversible error.

Here, petitioner was on trial for an offense for which the death penalty could have been imposed. Counsel was surprised by the ruling of the law officer excluding the testimony of Captain Cuprys. After this ruling, the failure of the Korean woman to complain of rape could have been established only by procuring the Korean interpreter as a witness. This testimony was definitely material. Since only the victim herself established the required elements of rape, lack of complaint to Captain Cuprys immediately after the incident would weigh heavily in favor of the defense. See Wharton, Criminal Law,

12th ed., § 727; Wharton, Criminal Evidence, 11th ed., § 311. Defense requested only an overnight delay, which would not have unduly prolonged the trial.

Applying the rules discussed above to the circumstances of this case, we think the refusal to grant the requested continuance constituted an abuse of discretion. There was here, in the trial of a capital case, an unexpected development which required that the defense obtain an additional witness who would have provided material, and possibly vital testimony. The ruling of the law member denying the continuance was, therefore, error which substantially prejudiced the accused.

We note, however, that this error does not affect the finding of guilty on the charge of assault with a deadly weapon with intent to commit bodily harm. This finding is supported by substantial evidence. Petitioner's sentence, as finally approved, amounts to confinement for 25 years; the assault finding will support a maximum of only 5 years. Thus, even though we affirm the assault finding, further remedial action is required. Accordingly, the decision of the board of review is reversed as to the charge of rape, affirmed as to the charge of assault, and the case is remanded to The Judge Advocate General of the Army for appropriate action.

Judge BROSMAN concurs.

GEORGE W. LATIMER, Judge: (dissenting)

I dissent.

There is no dispute in the facts of this case, and unless the testimony of the prosecutrix is unbelievable it establishes both charges of rape and assault with a dangerous weapon with intent to do great bodily harm. The accused did not take the witness stand to dispute the testimony of the prosecutrix, neither did he present evidence which cast any doubt on her version of the assault with a dangerous weapon. The doubt, if any, on the rape charge flows out of the weakening effect of the victim's failure to complain and certain negative findings of the doctor who examined her some 5 to 6 hours after the attack.

**376**

The Court's recitation of facts hardly does justification to the record. In addition to the testimony of the prosecutrix that her force and resistance were overcome by virtue of being threatened and stabbed with a knife, there is evidence in the record which shows the accused was present at the home at the time the alleged offense was committed. The prosecutrix was seen running out of the rear door and the accused leaving the front entrance. His companion on the trip and one of the witnesses called to testify in his behalf stated that upon coming out of the house the accused stated he had offered $5.00 to a woman to submit to an act of sexual intercourse and that his offer had been refused. The victim immediately reported to an American Army unit for treatment where she was given first aid and then removed to a hospital. At the hospital the wound was sutured by a Korean doctor and 3 hours later she was examined by an American doctor for evidence of rape. A complaint, which I believe concerned only the knifing, must have been made by the victim as before the accused and his companion drove away in the truck, which was standing across the street from the house, Captain Cuprys ordered them to remain with the truck. The truck was searched for the knife, but without success. Moreover, a group of soldiers was collected, a line-up held, and the accused was identified as the person committing the assault, all within 45 minutes time.

In elaboration of my reason for dissenting, I first suggest that the Court announces the general rule, that a granting or denial of a motion for continuance is within the sound discretion of the law member or officer, peremptorily holds that he violated the rule, but glosses over the factors which should be considered by him in exercising his discretion. They are well known in civilian practice, but apparently we are adopting a new formula without disclosing its constituent elements.

The record discloses the pretrial investigation of this case was completed on the 31st day of May, 1951, and that counsel represented the accused at the pretrial hearings. Statements of all

witnesses were attached to the record of this investigation and the one submitted by Captain Cuprys established that his conversation with the complaining witness was through an interpreter. The case came on for trial on the 19th day of June, 1951, and the Government proceeded with its case and put on its evidence. When the Government rested the defense made a motion for a continuance for the express purpose of making a further investigation and permitting defense counsel to contact any necessary witnesses. This motion was granted and the trial was continued until 19 days later.

The first witness called by the defense was Captain Cuprys, and the particular error used by the Court as the foundation for holding that the law member abused his discretion was occasioned by the ruling hereinafter set out:

"Q. Would you relate to the court the circumstances?

A. I was in the Depot and called to the Aid Tent where the woman was being dressed by the Aid man at that time. She had a cut on her left thigh, pretty high on the thigh and I got my interpreter and asked through him what had happened. She said—

. . . . . .

Q. Now during the course of the interview, did she make any complaint of rape?

A. No sir.

TC: May it please the court, I object, this statement would be strictly hearsay.

LO: Sustained.

DC: May it please the court, we are merely trying to offer the statement as having been made or not made and not the truth of it.

LO: If you can show the Captain understands Korean, he can answer."

After completing his examination of the Captain, which did not involve pursuing the questioned matter further, defense counsel offered into evidence a stipulation of the testimony of another doctor, which was received. He then moved the court for a continuance until the following day for the purpose of procuring the interpreter who had translated the conversation for Captain Cuprys. The law officer requested information as to what efforts had been made by the defense to have the interpreter available, and the defense counsel stated, "There is none." The law officer then denied the request stating there had already been a 19-day delay in the trial. The defense then requested a short recess in order to prepare an offer of proof and this was granted. The offer of proof was in substance that if the interpreter were present in court he would testify that he interpreted the conversation between the complaining witness and Captain Cuprys; that during the course of the conversation the witness made no complaint of having been raped. It is apparent from this offer, made while the trial was in progress, and the time involved in the requested continuance, that counsel for the accused was fully informed of the testimony which he expected to obtain from the interpreter and that he knew the interpreter was readily available to be called as a witness.

It is interesting to research the cases and find how many have announced the fundamental principles concerning this question and yet to note how few have been reversed by appellate courts because of an abuse of discretion on the part of a judge in civilian practice or a law member in military practice. There is little value in announcing that the law officer or member has a sound discretion to exercise and then reverse simply because he rules against the accused. If there is true discretion it may be used to rule for or against the accused, and if exercised against him there is apt to be some prejudice. However, our prerogative is only to determine whether there has been an abuse of discretion, because if there has not we do not reach the question of prejudice. It follows that in every instance where a continuance is refused some claim of prejudice can be asserted, but this alone is not sufficient. Were that not so the orderly trial of cases would be impossible as obstreperous or dilatory counsel could delay every case by not having witnesses present.

In the case of Neufield v. United

States, 118 F2d 375, at page 380, the United States Court of Appeals for the District of Columbia sets forth the rules which I believe should govern us in reviewing the ruling of the law member. The court there stated:

"The granting or refusal of a continuance is a matter of discretion of the judge to whom application is made. Avery v. Alabama (1940) 308 US 444, 60 S Ct 321, 84 L ed 377; Isaacs v. United States (1895) 159 US 487, 16 S Ct 51, 40 L ed 229; Tomlinson v. United States (1937) 68 App DC 106, 93 F2d 652, 114 ALR 1315, certiorari denied (1938) 303 US 646, 58 S Ct 645, 82 L ed 1107. *Therefore, under elementary principles of review, a trial court's ruling granting or refusing a continuance will not be reversed except for abuse of discretion.* A party seeking a continuance must make a showing that the same is reasonably necessary for *a just determination of the cause.* If the continuance is sought for the purpose of securing the attendance of witnesses, it must be shown who they are, what their testimony will be, that it will be relevant under the issues in the case and competent, that the witnesses can probably be obtained if the continuance is granted, and *that due diligence has been used to obtain their attendance for the trial as set.*

These propositions are so elementary as to require the citation of nothing but general authorities. See 12 American Jurisprudence, pages 448–471, inclusive, especially Sections 5, 9, 23, 24, 28; 16 Corpus Juris, pages 450–512, inclusive, especially Sections 829, 831, 846, 892, 921, 925; 22 CJS Criminal Law pp 737–837, inclusive, especially §§ 486, 488, 491, 502, 513." [Emphasis supplied]

The two underlying factors, namely, due diligence and the necessity for showing the evidence was necessary for a just determination of the cause, have been given little, if any, consideration by the Court. I, therefore, apply those factors to the facts and circumstances in this case.

I am at a loss to understand how anyone can reasonably find due diligence

in this record. As previously stated, the pretrial statement of Captain Cuprys shows he carried on the conversation through an interpreter. Defense had 19 days in which to prepare a defense and the interpreter must have been in the immediate vicinity of the locale of the trial. There is no contention that he had been requested as a witness; that he was subpoenaed; that he failed or refused to appear; that he was not available the day of trial; and there was no showing of excusable neglect for not having him present. Counsel for accused knew he was going to develop the theory of no fresh complaint and that the interpreter was the conduit through which any conversations must travel. Yet, he made no effort to have present the most important section of the channel of communication. It is hard to imagine how counsel could have done less. Not only should he have been concerned about the one statement, the whole conversation about both offenses might have been vitally important. The most that can now be said is that counsel claims he was surprised by a ruling of the law member on the admission of evidence which I believe was correct. It is not unfair to impose on defense counsel the duty to be familiar with the Manual, and if we were to follow the rule therein as did the law member I find no reasonable basis for concluding that the interpreter called by the Captain was an agent for the victim. Just what circumstances the ·majority relies on to suggest any such status are not mentioned. Be that as it may is it diligence not to know the rules of evidence or to rely on questionable methods of establishing facts when the best method is close at hand? Assuming the question of the admissibility of the evidence as not free from doubt, that does not furnish a reason for counsel not having witnesses present to meet the usual contingencies encountered in the trial of cases. Without question, defense counsel was accurate when he confessed no efforts had been made to have the desired witness present. But, in addition, he also overlooked having other witnesses testify about the same lack of complaint. The Korean doctor's testimony was incorporated in a stipu-

378

lation and the subject of fresh complaint was unmentioned. That witness examined the prosecutrix shortly after the assault and could have testified directly to his conversation with her. Again, another witness who might have furnished testimony first-hand was apparently not asked to supply the wanted testimony. The evidence which seemed of little importance before trial seems to be all-important on appeal. I can hardly subscribe to a principle which compels a court to grant a continuance because an accused, who has no apparent justification for so doing, gambles on proving facts and circumstances by questionable hearsay evidence and loses.

I would not scrutinize diligence so closely if the record showed substantial prejudice to the accused, but it does not. Prejudice ties in with the factor that accused must show the evidence was necessary for a just determination of the cause. The burden to establish both is on accused. In this connection, I call attention to the holding of Blanton v. State, 122 SW2d 644, 135 Tex Crim 654 (1938), cited in the majority opinion. That case does not deal with diligence, as it was conceded. But in touching the factor with which I am now dealing, the majority opinion, in discussing the Blanton case, supra, states:

". . . the court held that if the testimony of the absent witness was competent, material, credible, and would have supported the defendant's contentions, and if it is reasonably probable that a different result might be reached if the testimony sought by defense were before the court, the refusal to grant a continuance to obtain the witness is reversible error."

There was no issue before the court-martial concerning the making of a fresh complaint. The complaining witness did not testify on direct examination or on cross-examination that she made a complaint to anyone. She was not asked. Captain Cuprys, an American Army officer, Dr. Kang Chun Won, a Korean doctor, and Captain Robert Hassin, an American Medical officer, either conversed with or treated her. None of these witnesses testified as to any complaints made by her. Captain Cuprys testified in answer to a question that she did not make any such complaint. After having answered the question a belated objection was made by trial counsel. The law officer sustained the objection, but he did not strike the testimony, neither did he caution the court to disregard it. Overlooking the question of whether the court could legally consider the testimony because of no motion to strike, it is abundantly clear that the members of the court-martial could not have been misled into believing that the complaining witness made any fresh complaint to Captain Cuprys about rape. There was no evidence that she had, and if lack of complaint by a woman at the time she is being given first aid for a knife wound would affect the credibility of the victim then the state of the evidence was such that it weighed against her. This would be the only possible effect of the testimony of the interpreter. At most, the desired testimony was offered for impeaching purposes; and, viewed in the posture of this case, its reception would not have reasonably affected the finding of guilt.